# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARVIN GLOVER,

        Petitioner,      :      Case No. 3:16-cv-511

  - vs -                           District Judge Walter Herbert Rice
                                    Magistrate Judge Michael R. Merz

JEFF NOBLE, Warden,

                               :

        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Petitioner Glover seeks relief from his convictions in the Montgomery County Common Pleas Court on charges of rape and sexual battery. Having pleaded no contest to several of the charges against him, Glover was convicted in a bench trial and sentenced to ten years to life imprisonment. He appealed to the Second District Court of Appeals for Montgomery County which affirmed the conviction and sentence. *State v. Glover,* 2016-Ohio-2749, 2016 Ohio App. LEXIS 1634 (2nd Dist. Apr. 29, 2015); appellate jurisdiction declined, 146 Ohio St. 1492 (2016).

Glover pleads four grounds for relief:

> **Ground One:** Due process violated by conviction of Defendant without proving each element of crime beyond reasonable doubt.
>
> **Supporting Facts:** The state never prove [sic] any offense of rape. There was no DNA evidence or any evidence for the Defendant to be convicted of rape. The Defendant was actually innocence [sic]. The victim lied and the State had no physical or medical evidence. [Citing] *Fiore v. White,* 531 U.S. 25-229 (2001).
>
> **Ground Two:** Ineffective assistance [of counsel] of trial and appellate counsel violated Due Process of U.S. Constitution.
>
> **Supporting Facts:** Trial and appellate counsel failed to raise meritorious 14th Amendment claim. Counsel failed to move for dismissal of charges when there was no medical records put into evidence by the State of Ohio to prove any rape. Counsel performance was deficient and errors prejudiced defense, depriving petitioner of fair trial; counsel also failed to investigate petitioner's claims, evidence, and case. [Citing] *Robinson v. Schriro,* 595 F.3d 1086-1104 (2010); *Joshua v. DeWitt,* 341 F.3d 430-50 (6th Cir. 2003).
>
> **Ground Three:** Prosecution suppressed evidence favorable to defense, violated due process, knowing that petitioner was innocence [sic].
>
> **Supporting Facts:** The petitioner was denied full panoply of protections afforded to a criminal defendant by the U.S. Constitution. *Brown v. Palmer*, 2005 U.S. Dist. LEXIS 3185. Due process violated when prosecution withheld evidence that the only evidence the State had was hearsay testimony which caused actual prejudice, which was used from 911 tapes in violation of Confrontation Clause had substantial and injurious [effect]. [Citing] *Brecht v. Abrahamson,* 507 U.S. 619-30 (1993); *Brown v. Keane,* 355 F.3d 82, 92 (2nd Cir. 2004); *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963).
>
> **Ground Four:** The verdict was entered upon insufficient evidence in violation of the Due Process Clause of the 14th Amend. U.S. Const.

> **Supporting Facts:** The petitioner's conviction is not constitutionally sound; not any elements of the crime was proved beyond a reasonable doubt. [Citing] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792-794 (6th Cir. 1990)(en banc).

(Amended Petition, ECF No. 3, PageID 15-20.)

# ANALYSIS

**Grounds One and Four:  Insufficient Evidence**

In his First and Fourth Grounds for Relief, Mr. Glover claims he was convicted on insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

3

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction.  *Musacchio v. United States,* 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

4

*Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. 86, ___, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). *Bell v. Howes*, 703 F.3d 848 (6th Cir. 2012).

In *State v. Glover, supra*, the court of appeals reviewed the testimony at trial at great length before deciding Glover's third assignment of error as follows:

**[\*P101]** Glover's third assigned error is as follows:

5

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**[\*P102]** Glover asserts that "T.H.'s testimony of events alleged from ten years earlier was conflicting in several details." He asserts that her testimony was inconsistent as to the frequency of the abuse, how often he left money on her dresser, what she wore at the time of the first incident, and when she began cutting herself. Glover notes that "T.H.'s purported memory of the first alleged incident in 2003 was presented as clearer than her memory of specific details of the alleged incident of gross sexual imposition from December, 2013." Glover further notes that T.H. never told anyone about the ongoing abuse, and that S.K. never told her own parents. Glover asserts that there "was no corroborating evidence of T.H.'s allegations of rape." According to Glover, if "this Court overrules the first and second assignments of error and holds that the complained of evidence was properly admitted, the trial court nonetheless could not use that evidence to prove that appellant acted in conformity therewith regarding" the offenses before the court.

**[\*P103]** The State responds that T.H.'s "inability to accurately remember how often or how regularly Glvoer molested her over the course of 11 years does not mean the judge lost his way in crediting her testimony about the three crimes about which she offered detailed testimony." According to the State, the number of times Glover left money on T.H.'s dresser "is not an element of the crimes with which he was charged," and that whether she wore a nightdress or pajamas the first time she was abused is "inconsequential, especially when compared to the details she did recall." The State asserts that the court "was not required to disbelieve" T.H. about the cutting and suicide attempt "simply because she never told her mom and the scars eventually faded." The State asserts that T.H.'s "testimony was not incredible simply because she did not disclose the abuse to an adult until she called 911 in March of 2014." The State asserts that the fact that her mother never noticed her depression and cutting behavior is not evidence that T.H. is not credible. Finally, the State asserts that there is "no reason to believe that the judge who found Glover guilty did so by using [Evid.R. 404(B)] evidence as proof of his propensity to commit the crimes."

**[\*P104]** As this Court has previously noted:

> When analyzing a challenge to the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. McKnight*, 107 Ohio St. 3d 101, 112, 2005-Ohio-6046, 837 N.E.2d 315. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*
>
> The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997).

*State v. Henderson*, 2d Dist. Montgomery No. 26018, 2014-Ohio-4601, ¶ 23-24.

[*P105] Glover was convicted of two violations of R.C. 2907.02, which provides: "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Glover was convicted of one violation of R.C. 2907.03, which proscribes sexual battery and provides: "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." R.C. 2907.01(A) defines "sexual conduct" in part as "cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another."

7

**[\*P106]**  Having reviewed the entire record, we cannot conclude that Glover's convictions are against the manifest weight of the evidence due to the inconsistencies in T.H.'s testimony and her delay in disclosing the abuse. Miceli testified, as an expert in the dynamics of childhood sexual abuse, that inconsistencies are common in delayed disclosure cases involving multiple instances of abuse, because "it can be difficult to remember specifics of any one event" unless "there's something unique about that event." While T.H. may not have remembered all of the specific details of the offenses before the court, her testimony was clear that in the course of the first instance of abuse on Iddings Court, Glover entered her room in boxer shorts, put his drink on her dresser, performed oral sex on her in her bed, smelled of alcohol, and told her that the abuse was their little secret. Similarly, T.H.'s testimony was clear as to the subsequent offenses where Glover deviated from his usual pattern of performing oral sex on T.H. in her bed by carrying her downstairs before abusing her in the living room on Iddings Court, and subsequently by digitally penetrating her on Bromley Place, causing a sharp pain that prompted T.H. to push him off, resulting in Glover's apology and promise not to do it again. The factfinder credited T.H.'s testimony, and we defer to the court's assessment of credibility.

**[\*P107]**  Further, we note Miceli's testimony that it is common for child victims not to disclose sexual abuse until adulthood. Miceli stated that many young children are not aware that anything inappropriate has happened to them when the abuser is someone they trust, and we note that T.H. testified that in the course of the first instance of abuse, she did not know what to do. Miceli testified that "once an abuse has happened one time and the child hasn't told, they are less likely to tell as time passes." Miceli testified that children also commonly disclose abuse in a vague and incremental fashion to someone they trust, and the record reflects that T.H. did so with S.K. Miceli testified that some children "compartmentalize" the abuse and continue contact with their abuser, and T.H. testified that she did not want to tear her family apart, so she "just acted like it wasn't happening until I got older." Miceli stated that it is difficult for children to disclose abuse because they worry that they will not be believed or get into trouble, and T.H. testified that she did not disclose the abuse because she feared angering her mother. S.K. testified that T.H. feared that her family would be torn apart if she disclosed the abuse.

**[\*P108]**  While Glover suggests that J.D.'s failure to notice T.H.'s depressive symptoms impugns T.H.'s credibility, J.D.

8

> suffers from a mental illness, and Miceli testified that child victims of sexual abuse often exhibit internalizing behaviors "that are turned more inward so there tends to be anxiety, nightmares, suicidal ideation, depressive symptoms, cutting," and that those around victims with internalizing behaviors often "are not aware of that." T.H. testified that she cut herself and attempted suicide, and that she did not confide in J.D. or seek medical treatment.
>
> [*P109] Finally, as noted above, Glover was tried to the bench, and we presume that the trial court considered only the relevant, material, and competent evidence in arriving at its judgment, and we conclude that the record does not affirmatively reflect, as Glover asserts, that the court improperly considered evidence of other crimes, wrongs or acts to prove Glover's character in order to show action in conformity therewith, in violation of Evid.R. 404(B).
>
> [*P110] Having thoroughly reviewed the entire record, weighed the evidence and all reasonable inferences, and deferring to the trial court's assessment of credibility, we conclude that a manifest injustice is not demonstrated, and that Glover's convictions are not against the manifest weight of the evidence. Glover's third assignment of error is overruled.

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

The evidence recited by the Second District in its decision is plainly sufficient evidence for conviction. Mr. Glover complains that there was no DNA evidence, but DNA or other medical evidence is not required. The testimony of a victim is sufficient evidence under *Jackson*.

> "[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008), *citing United States v.*

9

>   *Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

*Bohannon v. Warden*, 2013 U.S. Dist. LEXIS 148355, *31-32 (S.D. Ohio Oct. 4, 2013) (Merz, M.J.)

Glover claims the victim lied and he is actually innocent. His trial strategy seems to have been pleading no contest to the sexual misconduct on March 18, 2014, that led immediately to his arrest in the hopes of keeping testimony about that sexual battery, from which DNA evidence was collected, out of the record. The State, on the other hand, offered evidence from the March 18th offense to show consistency of Glover's conduct over the course of years when the offenses happened and to rebut any inference that T.H.'s claims were a recent fabrication to prevent a family move to Beavercreek. Because a victim's testimony about sexual misconduct is by itself sufficient for conviction, the Second District's decision is neither contrary to nor an objectively unreasonable application of *Jackson, supra.* Mr. Glover's First and Fourth Grounds for Relief are without merit.

**Ground Two:  Ineffective Assistance of Trial and Appellate Counsel**

In his Second Ground For Relief, Mr. Glover claims his trial and appellate attorneys were ineffective for failing to move to dismiss the charges when there were not medical records put into evidence to prove rape.  He also claims trial counsel did not investigate his case.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the

> presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

With respect to the first part of Ground Two, Mr. Glover's claim is without merit because no medical evidence was required to prove the rape. As pointed out above, the victim's

12

testimony alone is sufficient. It cannot be ineffective assistance of trial counsel or ineffective assistance of appellate counsel to fail to raise a claim that is without any merit at all. Moreover, appellate counsel did raise a manifest weight of the evidence claim which, in this case, was much stronger than a sufficiency claims would have been.

The second part of this Ground for Relief is that trial counsel "failed to investigate Petitioner's claims, evidence, and case." (ECF No. 3, PageID 17). This claim is completely conclusory – there is no meat on the bones. Mr. Glover fails to allege what other investigation should have been done and what it would have revealed. Moreover, since whatever it is that counsel would have discovered is not part of the record, Mr. Glover was obliged to raise this claim first in a petition for post-conviction relief under Ohio Revised Code § 2953.21. Since he failed to do so, he has procedurally defaulted on this portion of Ground Three.

Ground Two is therefore without merit.

**Ground Three: Prosecutorial Misconduct**

In his Third Ground for Relief, Mr. Glover claims the prosecution suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). However, he does not discuss any evidence which was actually suppressed. Instead, he claims the State did not reveal until trial that all of its evidence was hearsay. *Brady* does not require disclosure before trial of the weaknesses of the State's case, which is not evidence, properly speaking. No proper *Brady* claim is apparent in the Amended Petition,

Mr. Glover does make, however, a Confrontation Clause claim related to the use of 911 recordings. No Confrontation Clause argument was made on appeal, so the claim is procedurally

13

defaulted. Moreover, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has a prior opportunity for cross-examination…" *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). However, the victim was not absent from trial, but was fully available for cross-examination. Glover's third Ground for Relief is therefore also without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, the Court should also deny any requested certificate of appealability and certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 9, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the

transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).